## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 18-11043-TMD** |
| **SELENA D. CASH** | § | |
| | § | **CHAPTER 7** |
| Debtor | § | |
| **J. PATRICK LOWE, Chapter 7 Trustee,** | § | |
| **and SELENA D. CASH, deceased,** | § | |
| **by and through ARLETHA CASH,** | § | |
| **Independent Administrator,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **ADVERSARY CASE** |
| | § | |
| **ANTHONY L. SHERIDAN,** | § | |
| **WILLIAM SHERIDAN,** | § | **NO. 19-____-TMD** |
| **LINDA SHERIDAN,** | § | |
| **CEAIRA C. SHERIDAN,** | § | |
| **LM RIVERS, JR,** | § | |
| **LJA VENTURES, INC.,** | § | |
| **AUDIT GUARD, INC.,** | § | |
| **MONEYFUND, INC.,** | § | |
| **FDR MANAGEMENT GROUP, INC.,** | § | |
| **JOHNNIE R. TYLER, JR.** | § | |
| **ROBERT TURNER,** | § | |
| **and CCS ASSET MANAGEMENT, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

### PLAINTIFFS' ORIGINAL COMPLAINT
### FOR DECLARATORY JUDGMENT, DAMAGES, & INJUNCTIVE RELIEF

**COME NOW** Plaintiffs J. Patrick Lowe, Chapter 7 Trustee ("**Trustee Lowe**") and Selena D. Cash, deceased, by and through Arletha Cash, Independent Administrator (the "**Debtor**" or "**Ms. Cash**") (collectively, the "Plaintiffs"), and file this their Original Complaint for Declaratory Judgment, Damages, & Injunctive Relief, and respectfully state as follows:

1

## SUMMARY OF ACTION

1.      This lawsuit is brought to address the theft, conversion, fraud, breaches of fiduciary duty, breaches of contract, and financial elder-care abuse perpetrated by Anthony Sheridan, acting individually and in combination with co-Defendants LM Rivers, Jr., William Sheridan, Linda Sheridan, Ceaira C. Sheridan, LJA Ventures, Inc., Moneyfund, FDR, Tyler, Turner, Audit Guard, Inc., CCS Asset Management, Inc., and others, as co-conspirators. The victim of these acts, Ms. Cash, now deceased, was, at the time of her death, a 90-year old, long-time resident of Austin, Travis County, Texas. The Debtor passed away recently on Thursday, August 22, 2019. The interests of Ms. Cash, to the extent not bankruptcy estate property, are now represented in this action by Arletha Cash, the Independent Administrator of Ms. Cash's last will and testament. Ms. Cash's bankruptcy estate acts through Trustee Lowe, the duly appointed chapter 7 trustee in the above styled and numbered bankruptcy case.

2.      This action is brought to remedy the conduct of the Defendants, to declare and restore Ms. Cash as the 100% owner of 4709, Inc. d/b/a Midtown Live, a Texas corporation ("**4709**"), to remove Defendants from any further management or control over 4709 or its assets, to recover damages resulting from the conduct of the Defendants, and to enjoin any further such conduct. As detailed herein, in addition to the declaratory relief and damages sought, in order to prevent immediate and irreparable harm to the bankruptcy estate and 4709, the Plaintiffs request entry of a temporary restraining order, as well as preliminary and permanent injunctive relief.

## PARTIES

3.      Plaintiffs bring this action on behalf of the bankruptcy estate, including any surplus distributable through the probate estate of Ms. Cash. Plaintiffs also sue derivatively on behalf of 4709.

4.      Defendant Anthony L. Sheridan ("**A. Sheridan**") may be served with summons and complaint at 7408 Cameron Road, Austin, Texas 78752 or wherever he may be found. A. Sheridan is a licensed real estate broker in Texas, Broker No. 485831.

5.      Defendant LM Rivers, Jr. ("**Rivers**") may be served with summons and complaint at 13276 N. Highway 183, Suite 208, Austin, Texas 78750 or wherever he may be found.

6.      Defendant William Sheridan ("**W. Sheridan**") may be served with summons and complaint at 13276 Research Blvd. Suite 208, Austin, Texas 78750 or wherever he may be found.

7.      Defendant Linda Sheridan ("**L. Sheridan**") may be served with summons and complaint at 111 Congress Avenue, 4th Floor, Austin, Texas 78701 or wherever she may be found.

8.      Defendant Ceaira C. Sheridan ("**C. Sheridan**") may be served with summons and complaint at 111 Congress Avenue, 4th Floor, Austin, Texas 78701 or wherever she may be found.

9.      Defendant LJA Ventures, Inc. ("**LJA**") may be served with summons and complaint by serving its registered agent Audit Guard Inc. at 13276 N. Highway 183, Suite 208, Austin, Texas 78750.

10.      Defendant Audit Guard Inc. ("**Audit Guard**") may be served with summons and complaint by serving its registered agent McKee Law Group at 13276 N. Highway 183, Suite 209, Austin, Texas 78750. Audit Guard is owned and controlled by A. Sheridan.

11.      Defendant Moneyfund, Inc. ("Moneyfund") may be served with summons and complaint by serving its registered agent Audit Guard Inc. at 13276 N. Highway 183, Suite 208, Austin, Texas 78750. Moneyfund is owned and controlled by A. Sheridan and his family members, W. Sheridan and C. Sheridan.

12.      Defendant FDR Management Group Inc. ("FDR") may be served with summons and complaint by serving its registered agent Audit Guard Inc. at 13276 N. Highway 183, Suite 208, Austin, Texas 78750. CCS is owned and controlled by, *inter alia*, A. Sheridan and his family member, W. Sheridan.

13.      Defendant CCS Asset Management, Inc. ("**CCS**") may be served with summons and complaint by serving its registered agent Audit Guard Inc. at 13276 N. Highway 183, Suite 208, Austin, Texas 78750. CCS is owned and controlled by A. Sheridan and his family members, L. Sheridan and C. Sheridan.

14.      Defendant Johnnie R. Tyler Jr. ("Tyler") may be served with summons and complaint at 111 Congress Avenue, Suite 400, Austin, Texas 78701, or wherever he may be found.

15.      Defendant Robert Turner ("Turner") may be served with summons and complaint at 13276 N. Highway 183, Suite 208, Austin, Texas 78750 or wherever he may be found.

16.      Defendant 4709 is joined as a necessary party to the relief requested and asserted herein.

## JURISDICTION & VENUE

17.     This Court has jurisdiction pursuant to 28 U.S.C. § 157(a), 28 U.S.C. § 334(b), and the standing Western District Order of Reference of Bankruptcy Cases and Proceedings dated October 4, 2013. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O).

18.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

## FACTS

### A.     History and Background of the Debtor

19.     Ms. Cash was born in 1928 in Pelham Texas,[1] to Thomas and Olga Douglas. Ms. Cash was a descendant of formerly enslaved Texans who established and maintained one of the earliest freed-persons colonies in Texas. Straddling the Hill and Navarro County lines, Pelham, Texas served as a post-bellum oasis with newly freed, close-knit families, intent on creating their own schools, erecting their own churches, and owning their own land.

20.     Like other rural African-Americans, Ms. Cash's family lived off the land, raising crops like cotton and pecans for survival and sale. This work ethic influenced Ms. Cash's life, gave it purpose, and was instilled in her children. Ms. Cash was very proud of her roots in the Pelham Community and, after moving to Austin, Texas, attended the Pelham Annual Homecoming every year.

21.     Ms. Cash moved to Austin, Texas in the late 1940s to attend Samuel Huston College (now Huston-Tillotson University). Ms. Cash graduated from Samuel Huston College with a Bachelor of Arts, and later received a Master of Education from Prairie View A&M. After moving to Austin, Ms. Cash met and married Aaron Cash, then a Music Professor at Samuel Huston College. While raising four children, Ms. Cash was involved in various social, charitable, and civil rights circles.

22.     As an educator, Ms. Cash worked for over forty years in the Austin Independent School District. Her tenure included Kealing Jr. High, Martin Jr. High, Allan Jr. High, Lanier High School, Murchison Jr. High, and Kealing Magnet School, where she served as a teacher, counselor, and principal. With public school desegregation in the courts and on the horizon, Ms. Cash played no small role in navigating AISD's transition towards desegregated schools.

---

[1] Pelham, Texas is located nearby Corsicana, Texas.

23.     After an appointment to assistant principal at Murchison Junior High, Ms. Cash earned a promotion to principal at Murchison in 1981. She was the first African American female to hold that position in AISD history. Ms. Cash's groundbreaking service at Murchison led to her appointment as the first principal of the desegregated Kealing Magnet School in 1985. Besides creating scholars in the Kealing Magnet School, Ms. Cash fought to include classes that taught students early-life skills by installing a full commercial kitchen for students to be trained as chefs, as well as establishing curricula for upholsterers, woodworkers, mechanics, and plumbers. Ahead of her time, Ms. Cash believed strongly that every child had a gift and could be successful whether they attended college or not. Ms. Cash wanted to ensure that all students, regardless of their economic or social background, were prepared with the skills they needed to support their families.

24.     Upon retirement, Ms. Cash continued to mentor countless young people and former students through entertainment and business ownership of Midtown Live, an historic Austin restaurant and live music club, where Ms. Cash brought people together through music, dance, and food.

25.     At all times relevant to this action, prior to January 2018, Ms. Cash was the sole shareholder of 4709. At all times relevant to this action, prior to January 2018, 4709 owned and operated the Midtown Live club ("**Midtown Live**"), and also owned the real property and shopping center in Travis County, Texas, upon which it was located. That real property being particularly described as:

> Lot 2, Re-subdivision of Lot 11, REAGAN HILL, a subdivision in Travis County, Texas, according to the map or plat thereof recorded in Volume 92, Page 65, of the Plat Records of Travis County, Texas

(the "**Cameron Road Property**"). At all times relevant to this action prior to January 2018, 4709 owned the business personal property associated and used in connection with Midtown Live.

26.     At all times relevant to this action, prior to and after January of 2018, 4709 has held the TABC liquor license for Midtown Live. At all times relevant to this action prior to and after January of 2018, Ms. Cash was identified at the TABC as the sole shareholder of 4709.

27.     As alleged in detail herein below, during 2017 and 2018 and continuing into 2019, through deception, fraud, and outright theft, A. Sheridan and the other Defendants conspired to convert Ms. Cash's ownership and control of 4709, Midtown Live, and to denude the assets of 4709.

**B.     The Seeds of the Sheridan Conspiracy and Deception**

28.     Leading up to an agreement entered into by Ms. Cash in December of 2017, A. Sheridan presented himself to Ms. Cash as an experienced business-person, qualified as manager of financial risk, and capable of assisting and addressing operational and financial issues for 4709, Inc., which had –at the time– outstanding real property taxes and related secured debt to address. In fact, A. Sheridan lacks the basic skills necessary to competently manage a business and to assist competently with any restructuring. In fact, at all relevant times, despite undertaking fiduciary obligations to Ms. Cash, A. Sheridan was acting in his own self-interest to the detriment of Ms. Cash.

29.     During October and November of 2017, A. Sheridan developed and presented a proposal to Ms. Cash pursuant to which the business of 4709 would be separated and placed into two entities: one entity to hold the Cameron Road Property, and one entity to own and operate Midtown Live. A third entity, a trust to hold Ms. Cash's equity in each corporation, was to be created. Defendant Rivers was to serve as the trustee of this trust for the benefit of Ms. Cash.[2] A so-called "Management and Financial Stabilization Agreement" was prepared by or at the direction of A. Sheridan for execution by Ms. Cash and others (the "**MFS Agreement**"). Others proposed to participate and sign the MFS Agreement included Defendant Rivers, as a trustee for the trust to be set up to hold Ms. Cash's equity interests. In this capacity, Defendant Rivers was also proposed to serve on the board of 4709 pursuant to the MFS Agreement.

30.     Pursuant to this agreement, A. Sheridan was to serve as the chief financial officer of 4709 and to adopt and implement an executive control board (called the "ECB") to make decisions and act for Midtown Live. As designed by A. Sheridan, this so-called ECB was to include "a minimum of seven board members" to "simplify [sic] decision process and avoid deadlock."

---

[2] A. Sheridan and co-conspirator Moneyfund's involvement with Ms. Cash and 4709 date to 2014, when they first entered the scene with A. Sheridan, through Moneyfund, proposing to assist as a lender to 4709 with refinancing/restructuring an outstanding loan owed by 4709 to Pride of Austin High Yield Fund I LLC. Subsequently, before the MFS Agreement was entered into, A. Sheridan proposed to serve as an officer of 4709, with an incentive based compensation.

**C.     The Fleecing of Ms. Cash by Defendants and the Stripping of Assets of 4709**

31.     On December 3, 2017, the MFS Agreement was signed by Ms. Cash, A. Sheridan, Rivers,[3] and John Hoberman on behalf of a purported lender, Mamalama Assets, LLC. Ms. Cash was not represented by counsel in connection with the negotiation or execution of the MFS Agreement. Instead, A. Sheridan and Rivers (and possibly others) prepared and approved, respectively, this document, purportedly acting as Ms. Cash's fiduciaries in the transaction. A true and correct copy of the MFS Agreement is attached hereto as Exhibit "A."

32.     On January 9, 2018, as an initial step in the implementation of the MFS Agreement, Ms. Cash assigned the Cameron Road Property by deed to Defendant CCS (the "**Cameron Road Deed**"). However, unbeknownst to Ms. Cash, neither she nor any trust created for her benefit were the owners of Defendant CCS. Instead, CCS was an already existing entity formed by A. Sheridan in October of 2013. At all times relevant to this action, Defendants C. Sheridan, L. Sheridan, and A. Sheridan served as the directors of Defendant CCS. The ownership and control of Defendant CCS was concealed from Ms. Cash by A. Sheridan and the other co-conspirators, including, without limitation, Rivers. A true and correct copy of the Cameron Road Deed is attached hereto as Exhibit "B."

33.     The consideration as identified in the Cameron Road Deed is as follows:

> TEN AND NO/100 DOLLARS ($110.00) and other good and valuable consideration, **and a wrap around note of even date that is in the principal amount of Note Amount ($1,700,000) and is executed by Grantee** [i.e., CCS] **payable to the order of Seller** [i.e., 4709]. It is secured by a vendor's lien retained in this deed and by a deed of trust of even date from Grantee to Daniel Nelson, Trustee."

*See* Exhibit "B" (emphasis added). The Cameron Road Deed identifies a "vendor's lien" purportedly in favor of Grantor until the $1,700,000 note is paid in full. *Id.* However, no $1,700,000 note was ever prepared, executed by A. Sheridan, L. Sheridan, or C. Sheridan, or performed by CCS. In connection with this transaction, on or about December 27, 2017, A. Sheridan obtained and presented to Ms. Cash a Title Insurance Commitment from Stewart Title, File No. 159640, wherein he identified that the proposed insured under an Owner's Policy of Title Insurance would be 4709 with a policy amount of $1,700,000, intending for Ms. Cash to understand and believe that 4709 would be insured by the title policy.

---

[3] Rivers indicated next to his signature that he signed as "Board and Trustee." *See* Exhibit "A."

34.     Also, on January 9, 2018, A. Sheridan presented a document entitled "Shareholder Resolution Appointing Directors" for execution by Ms. Cash. The resolution appointed A. Sheridan and Rivers to the board of 4709, and designated Ms. Cash the chair of the board. This resolution was signed by Ms. Cash as the "100% Shareholder" of 4709. A true and correct copy of this resolution is attached hereto as Exhibit "C." Ms. Cash was not represented by counsel in connection with execution of the Shareholder Resolution Appointing Directors. Instead, A. Sheridan and Rivers (and possibly others) prepared and approved, respectively, this document, purportedly acting as Ms. Cash's fiduciaries.

35.     On the same date, A. Sheridan presented a document entitled "Board Resolution Appointing Officers." Pursuant to this document, Selena Cash was named President, A. Sheridan was named Vice President, Defendant W. Sheridan was named Secretary, and Rivers was named Treasurer. This resolution was signed by Ms. Cash, A. Sheridan, and Rivers on January 9, 2018, as the Directors of 4709. A true and correct copy of this resolution is attached hereto as Exhibit "D." Ms. Cash was not represented by counsel in connection with execution of the Board Resolution Appointing Offiers. Instead, A. Sheridan and Rivers (and possibly others) prepared and approved, respectively, this document, purportedly acting as Ms. Cash's fiduciaries.

36.     On the same date, A. Sheridan presented Ms. Cash with a document entitled "Resolution of Board of Directors," which purportedly documented a meeting of the "directors" of 4709 occurring at 7 a.m. on January 7, 2018, approving the refinancing of the Cameron Road Property, with a loan of "up to $1,700,000 in 1st lien position." This resolution was signed by Ms. Cash on January 9, 2018 as President of 4709. A true and correct copy of this resolution is attached hereto as Exhibit "E." Ms. Cash was not represented by counsel in connection with execution of this alleged Resolution of Board of Directors. Instead, A. Sheridan and Rivers (and possibly others) prepared and approved, respectively, this document, purportedly acting as Ms. Cash's fiduciaries.

37.     On January 24, 2018, at A. Sheridan's insistence, Ms. Cash executed a limited "Statutory Durable Power of Attorney" in favor of A. Sheridan (the "Power of Attorney"). A true and correct copy of the Power of Attorney is attached hereto as Exhibit "F." The Power of Attorney contained the following identification of and limit upon the grant of power:

I, Selena Cash, the sole stockholder, president and secretary of 4709, Incorporated dba Midtown Live, of 7602 Brookhollow Cove, Austin, Travis County, Texas, 78752-2103 appoint ANTHONY SHERIDAN, 111 Congress Avenue, Austin, Texas 78701, as my Agent, *on behalf of 4709 Incorporated dba Midtown Live*

*only, to act for the corporation in any lawful way with respect to all of the following powers* that I have initialed below.

*See* Exhibit "F" (emphasis added). Thus, by its plain text, the limited Power of Attorney only authorized Defendant A. Sheridan to act for Ms. Cash with respect to acts on behalf of 4709, and not acts in her individual capacity. To be clear, Ms. Cash never executed a Power of Attorney granting authority to act in her individual capacity in favor of A. Sheridan.

38.     On February 5, 2018, a chapter 13 bankruptcy case for Ms. Cash was filed by Austin, Texas attorney, Darwin McKee.[4] Darwin McKee ("**McKee**") has many connections to A. Sheridan. McKee is a director of Defendant Audit Guard. McKee's law firm is the registered agent for Defendant Audit Guard. McKee served as the attorney for A. Sheridan in seeking to quash his 2004 examination in *this* chapter 7 bankruptcy case. Ms. Cash did not physically sign the bankruptcy petition or any of the other documents filed in her name in the bankruptcy case. The chapter 13 bankruptcy case was dismissed on June 1, 2018 for lack of compliance in filing E-Declarations. It is unclear whether Ms. Cash ever authorized the filing of the chapter 13 bankruptcy case. It certainly provided her with no benefit.

39.     Next, on or about February 15, 2018, A. Sheridan, acting —purportedly—pursuant to the Power of Attorney, executed a document entitled "Shareholder Resolution Appointing Directors." This document, **signed by A. Sheridan allegedly as the 100% shareholder**, made A. Sheridan the Chair of the board of 4709. Defendants W. Sheridan and Rivers were named as directors. Ms. Cash, thus, was purportedly removed from the board. Ms. Cash, the actual sole shareholder of 4709 did not sign this document. In fact, Ms. Cash never assigned her interest in 4709 to A. Sheridan. A. Sheridan never paid any consideration to Ms. Cash in exchange for her interest in 4709. Further, this document could not have validly been executed by Sheridan under the limited Power of Attorney as it was not an action of the corporation. Instead, it purported to be an act of the shareholder (e.g., Ms. Cash). In fact, Ms. Cash never authorized this transaction. As such, this act is void *ab initio*. A true and correct copy of this resolution is attached hereto as Exhibit "G."

40.     Next, also on February 15, 2018, A. Sheridan signed a document entitled Board Resolution Appointing Officers. This document, signed by A. Sheridan as the "New Chair, Board

---

[4] This chapter 13 bankruptcy case was styled and numbered *In re Selena D. Cash*, Case No. 18-10111-hcm (Bankr. W.D. Tex., February 5, 2018).

of Directors," appointed the following officers of 4709: A. Sheridan as President, A. Sheridan as Vice President, W. Sheridan as Secretary, and Rivers as Treasurer. Ms. Cash, thus, was purportedly removed as an officer. This document, like the document upon which it relies, is void *ab initio*. A true and correct copy of this resolution is attached hereto as Exhibit "H."

41.     Thus, by February 15, 2018, acting without any legal authority, A. Sheridan, W. Sheridan, and Rivers had purportedly: (1) stripped Ms. Cash of her interest in 4709; (2) removed Ms. Cash as the Chair of the Board; and (3) removed Ms. Cash as the President of 4709.

42.     Next, on March 27, 2018, A. Sheridan prepared and executed a Resolution of the Board of Directors, pursuant to which he purportedly transferred 100% of the shares in 4709 from himself to Rivers. This Resolution also authorized Rivers to control, change, or modify any bank account for 4709 and to perform all necessary acts to carry out such task. As noted above, Ms. Cash never assigned her stock in 4709 to A. Sheridan. Thus, A. Sheridan could not have validly assigned an interest in the stock of 4709 to Rivers. A. Sheridan never paid any consideration to Ms. Cash for her interest in 4709. The attempt was ill-conceived and reflects A. Sheridan's complete lack of understanding of basic business and legal concepts. Additionally, because A. Sheridan is a licensed real estate broker, he knew or should have known that he was neither qualified nor permitted to render legal advice. Obviously, the transfer of an ownership interest in stock is not accomplished by a board resolution. Rivers never paid any consideration to Ms. Cash for her interest in 4709. Thus, the transfer to Rivers, too, is void *ab initio*. A true and correct copy of this resolution is attached hereto as Exhibit "I."

43.     At no time did A. Sheridan, W. Sheridan, and/or Rivers create a trust and place Ms. Cash's equity interests in 4709 into such trust as contemplated by the MFS Agreement. At no time did A. Sheridan, W. Sheridan, and/or Rivers create a second, special purpose corporation to hold the Cameron Road Property as contemplated by the MFS Agreement. Instead, A. Sheridan, W. Sheridan, and Rivers orchestrated and implemented a scheme to deceive Ms. Cash into transferring the Cameron Road Property into a pre-existing A. Sheridan company.

44.     On March 29, 2018, Rivers executed a "Shareholder Resolution Appointing Directors." In this purported resolution, A. Sheridan was named chair, and W. Sheridan and Rivers were named directors of 4709. Ms. Cash never authorized this action. This attempt, too, is void *ab initio*. A true and correct copy of this resolution is attached hereto as Exhibit "J."

45.     On April 27, 2018, A. Sheridan executed a "Resolution of the Board of Directors." In this purported resolution, 4709 supposedly transferred 100% of shares from Rivers to W. Sheridan in exchange for a purported cash investment of $5,000 by W. Sheridan. Ms. Cash never authorized this transfer. Ms. Cash never assigned her interest in 4709 to A. Sheridan, to Rivers, or to W. Sheridan. Ms. Cash was never paid any consideration by A. Sheridan, Rivers, or W. Sheridan for her interest in 4709. This purported transaction, too, is void *ab initio*. A true and correct copy of this resolution is attached hereto as Exhibit "K."

46.     Thus, by April 27, 2018, having –in their minds only– established ownership of and control over 4709 and its assets, A. Sheridan, W. Sheridan, and Rivers had dropped any pretense of preserving value for the benefit of Ms. Cash.

47.     On April 27, 2018, A. Sheridan executed a "Resolution of the Board of Directors." In this purported resolution, 4709 supposedly authorized the lease of its liquor license to Defendant LJA "in perpetuity for an annual fee of $357.00 which is due on the 1st of every January." Defendant LJA is owned or controlled by A. Sheridan. Defendant Audit Guard serves as its registered agent. Neither Ms. Cash nor a trust for her benefit own any interest in Defendant LJA. On February 9, 2018, Defendant LJA filed an assumed name certificate with the Texas Secretary of State for the d/b/a of Midtown Live. As noted above, it does not appear that any of the Defendants ever notified the Texas Alcoholic Beverage Commission of this purported transaction. Compounding these issues, on January 25, 2019, Defendant LJA forfeited its corporate status with the Texas Secretary of State. Ms. Cash never authorized the lease of 4709's liquor license to Defendant LJA. Ms. Cash never authorized the transfer of 4709's d/b/a "Midtown Live" to Defendant LJA. These purported transactions are void *ab initio*. A true and correct copy of this resolution is attached hereto as Exhibit "L."

48.     On April 27, 2018, A. Sheridan executed a "Resolution of the Board of Directors." In this purported resolution, Defendant W. Sheridan was named the new acting President of 4709. Ms. Cash never authorized this appointment. This purported appointment is void *ab initio*. A true and correct copy of this resolution is attached hereto as Exhibit "M."

49.     On April 27, 2018, Defendant W. Sheridan, purportedly as 100% shareholder of 4709, executed a "Shareholder Resolution Appointing Directors." In this resolution, A. Sheridan was appointed Chair, and W. Sheridan and Rivers were appointed directors of 4709. Ms. Cash

never authorized this appointment. This supposed appointment is void *ab initio*. A true and correct copy of this resolution is attached hereto as Exhibit "N."

50.     On August 8, 2018, McKee again filed a chapter 7 bankruptcy case for Ms. Cash. That filing commenced the instant bankruptcy case for Ms. Cash. Prior to filing her bankruptcy case, Mr. McKee never disclosed to Ms. Cash that he was representing (and would continue to represent) A. Sheridan and/or Audit Guard.

51.     On October 12, 2018, facing dismissal of her bankruptcy case for multiple failures to comply with filing requirements, Ms. Cash terminated Mr. McKee in writing. On the same date, Ms. Cash revoked in writing any powers held by A. Sheridan under the limited Power of Attorney. On November 14, 2018, Kell C. Mercer and Kell C. Mercer, PC filed a motion to substitute counsel in the bankruptcy case. This motion to substitute counsel was granted on December 3, 2018. A true and correct copy of the October 12, 2018 termination is attached hereto as Exhibit "O."

52.     On October 18, 2018, Defendant Rivers executed a "Resolution of Board of Directors" which supposedly authorized 4709 to release the "vendor's lien" found in the Cameron Road Deed which purportedly secured the $1,700,000 note owed by CCS to 4709. Ms. Cash never authorized this action. This action is void *ab initio*. A true and correct copy of this resolution is attached hereto as Exhibit "P."

53.     On October 23, 2018, Defendants W. Sheridan, A. Sheridan, and Rivers executed a purported "Board Resolution," supposedly appointing W. Sheridan as President and Secretary, A. Sheridan as Vice President, and Rivers as Treasurer. A true and correct copy of this resolution is attached hereto as Exhibit "Q."

54.     On October 29, 2018, a release of lien signed by Defendant A. Sheridan as "President" of 4709 was recorded, releasing the "vendor's lien" identified in the Cameron Road Deed. A true and correct copy of this release of lien is attached hereto as Exhibit "R."

55.     On November 13, 2018, another release of lien was recorded, again releasing the "vendor's lien" identified in the Cameron Road Deed. This time, Defendant A. Sheridan signed the release of lien as "Vice President" of 4709. A true and correct copy of this release of lien is attached hereto as Exhibit "S."

56.     Thus, by November of 2018, whatever consideration 4709 was supposed to have received in exchange for transferring the Cameron Road Property to CCS had been released. Ms. Cash never authorized this action.

57.     Meanwhile, since purportedly seizing control of Midtown Live in the spring of 2018, A. Sheridan, W. Sheridan, and Rivers have grossly mismanaged the club. A. Sheridan, W. Sheridan, and Rivers have taken over bank accounts belonging to 4709 without right or authority. A. Sheridan, W. Sheridan, and Rivers have refused to provide any financial or operational information to Ms. Cash. Upon information and belief, A. Sheridan, W. Sheridan, and Rivers have diverted funds and operational assets from 4709 without right or authority. Upon information and belief, Midtown Live has been and continues to be out of compliance with the Texas Alcoholic Beverage Commission ("**TABC**"). A. Sheridan, W. Sheridan, and Rivers have filed or allowed to be filed false statements with TABC placing the entire operation of the club at risk. These actions also place Ms. Cash and her bankruptcy and probate estates at risk for claims and damages. Upon information and belief, A. Sheridan, W. Sheridan, and Rivers have mishandled the payment of wages to and taxes for the staff of Midtown Live, placing Midtown Live at risk of being assessed fines and penalties, and being levied upon and/or shut down by the IRS and/or the Texas Workforce Commission.

58.     Meanwhile, despite paying nothing to 4709 for the assignment of the Cameron Road Property, and despite not being set up in compliance with the terms of the MFS Agreement, CCS continues to collect rents from the tenants. Defendant A. Sheridan testified during his 2004 examination that Defendant CCS receives monthly rental payments from the Cameron Road Property in the amount of $30,368.87. CCS has entered into new leases with tenants at the Cameron Road Property. Defendant LJA, owned controlled by A. Sheridan and Rivers has entered into leases with CCS and subleased property to other tenants. A. Sheridan, acting through Defendant CCS, and A. Sheridan and Rivers, acting through LJA, receives these rents and benefits from the assignment without accounting to Ms. Cash, Trustee Lowe, and/or 4709. Upon information and belief, A. Sheridan has served as a broker in connection with leases entered into by CCS and sub-leases entered into by LJA and has personally benefited from such transactions. A. Sheridan has not accounted to Ms. Cash, Trustee Lowe, and/or 4709 for these transactions. Upon information and belief, CCS has also run off qualified performing tenants at the Cameron Road Property and replaced them with affiliates of A. Sheridan. These actions have been orchestrated by A. Sheridan and implemented with co-conspirators Rivers, W. Sheridan, LJA, L. Sheridan, C. Sheridan, Moneyfund, FDR, Tyler, Turner, Audit Guard, CCS, and others.

59.    Upon information and belief, Defendant LJA, acting under the control of A. Sheridan and Rivers, has entered into an agreement with CCS and 4709 pursuant to which LJA obtains the use and benefit of the business personal property and goodwill of Midtown Live without any payment or accounting to Ms. Cash, Trustee Lowe, and/or 4709. Amazingly, Defendant CCS claims that it holds legal title to all of the business personal property of 4709. Defendant Sheridan, during his 2004 examination, claimed that the business personal property was somehow included (even though not referenced, identified, or described in any way) in the in the Cameron Road Deed. These actions have been orchestrated by A. Sheridan and implemented with co-conspirators Rivers, LJA, W. Sheridan, L. Sheridan, C. Sheridan, Moneyfund, FDR, Tyler, Turner, Audit Guard, CCS, and others.

60.    Upon information and belief, Defendant CCS, acting under the control of A. Sheridan and his co-conspirators, has failed to timely and fully pay real and/or business personal property taxes for the Cameron Road Property, placing it at risk of foreclosure. Defendant CCS, acting under the control of A. Sheridan and his co-conspirators, has failed to properly review and challenge appraised values set by the Travis Central Appraisal District for the Cameron Road Property, subjecting the property to higher than appropriate taxes. These actions have been orchestrated by A. Sheridan and implemented with co-conspirators LJA, W. Sheridan, L. Sheridan, C. Sheridan, Rivers, Moneyfund, FDR, Tyler, Turner, Audit Guard, CCS, and others.

61.    In May of 2019, without the authorization of Trustee Lowe or Ms. Cash, with McKee acting as counsel for 4709, Defendant A. Sheridan attempted to place 4709 into a chapter 11 bankruptcy case. [5] This bankruptcy case caused economic damage, confusion in the marketplace, and loss of goodwill to 4709 and Midtown Live. The 4709 bankruptcy case was dismissed on the motion of the United States Trustee.

## CAUSES OF ACTION

### A.    COUNT ONE - DECLARATORY JUDGMENT (against all Defendants)

62.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 61.

---

[5] This case was styled and numbered *In re 4709, Inc. d/b/a Midtown Live*, Case No. 19-10624-tmd (Bankr. W.D. Tex., May 14, 2019).

63.     A controversy exists over the ownership and control of 4709, the d/b/a Midtown Live, and the ownership and control of the Cameron Road Property.

64.     By this action, Plaintiffs seek a declaratory judgment under the Federal Declaratory Judgment Act and pursuant to Bankruptcy Rule 7001(2) and (9), that 100% of the ownership interest in 4709 is held by Ms. Cash and constitutes property of the Bankruptcy Estate pursuant to 11 U.S.C. 541(a), unless abandoned by Trustee Lowe. Plaintiffs seek a further declaratory judgment under the Federal Declaratory Judgment Act and pursuant to Bankruptcy Rule 7001(2) and (9), that none of the Defendants, including specifically but without limitation, A. Sheridan, Rivers, and/or W. Sheridan have or have ever had any ownership interest in 4709.

65.     By this action, Plaintiffs seek a declaratory judgment under the Federal Declaratory Judgment Act and pursuant to Bankruptcy Rule 7001(2) and (9), that each of the board and shareholder resolutions described above are void *ab initio* and/or rescinded, as applicable.

66.     By this action, Plaintiffs seek a declaratory judgment under the Federal Declaratory Judgment Act and pursuant to Bankruptcy Rule 7001(2) and (9), rescinding and setting aside the MFS Agreement.

67.     By this action, Plaintiffs, acting derivatively through 4709, seek a declaratory judgment under the Federal Declaratory Judgment Act and pursuant to Bankruptcy Rule 7001(2) and (9), rescinding and setting aside the Cameron Road Deed.

**B.     COUNT TWO – CONVERSION (against A. Sheridan, Rivers, and W. Sheridan)**

68.     Plaintiffs hereby incorporate and reassert the allegations set forth in paragraphs 1 through 61.

69.     Ms. Cash and/or her estate representatives, own, possess, and/or have the right to immediate and exclusive use and possession of 100% of the stock in 4709, identified above. The stock in 4709 is personal property. Defendants A. Sheridan, W. Sheridan, and Rivers wrongfully exercised dominion or control over the stock in 4709, as described and identified above.

70.     Plaintiffs suffered injury and damages as a result of the acts and conduct of A. Sheridan, Rivers, W. Sheridan. Plaintiffs sue to recover all such damages from A. Sheridan, Rivers, and W. Sheridan, jointly and severally.

C.     **COUNT THREE - BREACH OF FIDUCIARY DUTIES & DEFALCATION (against A. Sheridan, W. Sheridan, and Rivers)**

71.     Plaintiffs hereby incorporate and reassert the allegations set forth in paragraphs 1 through 61.

72.     Under the Power of Attorney, A. Sheridan owed fiduciary duties to Ms. Cash. As a director of 4709, A. Sheridan owed fiduciary duties to 4709 and Ms. Cash as the sole shareholder of 4709.

73.     As a director of 4709, W. Sheridan owed fiduciary duties to 4709 and Ms. Cash as the sole shareholder of 4709.

74.     As a director of 4709, Rivers owed fiduciary duties to 4709 and Ms. Cash as the sole shareholder of 4709. In addition to the duties owed by a director to 4709 and Ms. Cash as a shareholder, after agreeing to serve as a trustee to Ms. Cash including in the MFS Agreement, a special relationship was created pursuant to which Rivers owed fiduciary duties to Ms. Cash. This special relationship was relied upon by Ms. Cash, in her advanced age, and she placed a high degree of trust in Rivers' fulfilling his duties owed to her.

75.     The duties owed by A. Sheridan, W. Sheridan, and Rivers to Ms. Cash included the duty of loyalty and utmost good faith, the duty of candor, the duty to refrain from self-dealing, the duty to act with integrity of the strictest kind, the duty of fair, honest dealing, the duty to account, and the duty of full disclosure.

76.     Defendants A. Sheridan, W. Sheridan, and Rivers breached each of these duties through the acts and omissions described in paragraphs 1 through 59. Defendants A. Sheridan, W. Sheridan, and Rivers, acting as fiduciaries, misappropriated Ms. Cash's stock in 4709 contrary to the terms contained in the MFS Agreement. Defendant A. Sheridan, acting as a fiduciary under the limited Power of Attorney, vastly exceeded the limited authority granted therein by engaging in transactions with Ms. Cash's personal property, including her stock in 4709, assigning it first to himself, then to Defendant Rivers, and, finally, to Defendant W. Sheridan. Defendants A. Sheridan, W. Sheridan, and Rivers, acting as fiduciaries, assigned the Cameron Road Property to CCS in violation of the MFS Agreement and for little or no consideration. Defendants A. Sheridan, W. Sheridan, and Rivers, acting as fiduciaries transferred and assigned the operating and income producing assets of 4709 to CCS (allegedly as part of the Cameron Road Deed) and then to LJA for little or no consideration. Defendants A. Sheridan, W. Sheridan, and Rivers allowed CCS to

access and control income from the Cameron Road Property, including monthly rental payments from tenants, without reporting to Ms. Cash and/or Trustee Lowe. Defendants A. Sheridan, W. Sheridan, and Rivers filed false and misleading documentation with the TABC regarding the operations of 4709, LJA, and Midtown Live. Defendants A. Sheridan, W. Sheridan, and Rivers have, at all times, failed to account to Ms. Cash and/or Trustee Lowe. Plaintiffs, suing on behalf of Ms. Cash and derivatively on behalf of 4709, were damaged by such acts and omissions constituting breaches of fiduciary duty and defalcation. The acts and conduct of Defendants A. Sheridan, W. Sheridan, and Rivers were intentional, willful, and malicious. As such, Plaintiffs are also entitled to recover exemplary damages based upon the conduct of A. Sheridan, W. Sheridan, and Rivers. Plaintiffs, suing on behalf of Ms. Cash and derivatively on behalf of 4709, may also recover pre-judgment and post-judgment interest for all damages awarded. Plaintiffs, suing on behalf of Ms. Cash and derivatively on behalf of 4709, sue to recover all such sums, jointly and severally, from Defendants A. Sheridan, W. Sheridan, and Rivers.

**D.    COUNT FOUR – ACCOUNTING (against A. Sheridan, W. Sheridan, Rivers, CCS, Audit Guard, and LJA)**

77.    Plaintiffs hereby incorporate and reassert the allegations set forth in paragraphs 1 through 76.

78.    In addition to damages and exemplary damages, Plaintiffs, suing on behalf of Ms. Cash and derivatively on behalf of 4709, are entitled to a full and complete accounting from A. Sheridan, W. Sheridan, and Rivers, CCS, Audit Guard, and LJA of all property that has come into their possession relating to Ms. Cash, 4709, Midtown Live, and the Cameron Road Property and all details of the transactions they authorized and conducted while acting as fiduciaries to Ms. Cash.

**E.    COUNT FIVE – FRAUD (against A. Sheridan and Rivers)**

79.    Plaintiffs hereby incorporate and reassert the allegations set forth in paragraphs 1 through 78.

80.    A. Sheridan misrepresented to Ms. Cash his experience, qualifications, and intentions, and the intentions of his co-conspirator Defendants, including CCS, Moneyfund, FDR, Tyler, Turner, Audit Guard, LJA, W. Sheridan, C. Sheridan, L. Sheridan, and Rivers, in inducing Ms. Cash to enter into the MFS Agreement, the Cameron Road Deed, the Power of Attorney, and the corporate resolution appointing A. Sheridan, W. Sheridan, and Rivers as directors and officers

of 4709. These misrepresentations were material. The misrepresentations were false. When A. Sheridan made these misrepresentations, he knew they were false and/or he made them recklessly, as a positive assertion, without knowledge of their truth. A. Sheridan made each of these representations with the intent that Ms. Cash act upon them by executing the MFS Agreement, the Cameron Road Deed, the Power of Attorney, and the corporate resolutions appointing A. Sheridan, W. Sheridan, and Rivers as directors and officers. A. Sheridan acted intentionally, willfully, and maliciously in defrauding Ms. Cash. Ms. Cash relied upon these representations in executing these documents. Ms. Cash was ignorant of and did not have an equal opportunity to discover the true facts at the time she executed these documents. The representations of A. Sheridan caused damage to Ms. Cash and 4709, for which Plaintiffs sue derivatively.

81.     Rivers misrepresented to Ms. Cash his experience, qualifications, and intentions, and the intentions of his co-conspirator Defendants, including CCS, Moneyfund, FDR, Tyler, Turner, Audit Guard, LJA, W. Sheridan, C. Sheridan, L. Sheridan, and A. Sheridan, in inducing Ms. Cash to enter into the MFS Agreement, the Cameron Road Deed, the Power of Attorney, and the corporate resolution appointing A. Sheridan, W. Sheridan, and Rivers as directors and officers of 4709. These misrepresentations were material. The misrepresentations were false. When Rivers made these misrepresentations, he knew they were false and/or he made them recklessly, as a positive assertion, without knowledge of their truth. Rivers made each of these representations with the intent that Ms. Cash act upon them by executing the MFS Agreement, the Cameron Road Deed, the Power of Attorney, and the corporate resolutions appointing A. Sheridan, W. Sheridan, and Rivers as directors and officers. Rivers acted intentionally, willfully, and maliciously in defrauding Ms. Cash. Ms. Cash relied upon these representations in executing these documents. Ms. Cash was ignorant of and did not have an equal opportunity to discover the true facts at the time she executed these documents. The representations of Rivers caused damage to Ms. Cash and 4709, for which Plaintiffs sue derivatively.

82.     Plaintiffs sue to recover Ms. Cash and 4709's actual and exemplary damages from A. Sheridan and Rivers, jointly and severally. Additionally, and/or alternatively, Plaintiffs seek the equitable remedy of recession of the MFS Agreement and the Cameron Road Deed.

F.    **COUNT SIX – ASSISTING OR ENCORAGING/CONSPIRACY (against A. Sheridan, W. Sheridan, L. Sheridan, C. Sheridan, Rivers, LJA, Moneyfund, FDR, Tyler, Turner, Audit Guard, and CCS)**

83.    Plaintiffs hereby incorporate and reassert the allegations set forth in paragraphs 1 through 82.

84.    As set forth above, A. Sheridan, W. Sheridan, and Rivers converted and engaged in defalcation of the stock in 4709. Additionally, A. Sheridan, W. Sheridan, and Rivers breached fiduciary duties owed to Ms. Cash and 4709, for which Plaintiffs sue derivatively.

85.    Sheridan, W. Sheridan, Rivers, L. Sheridan, C. Sheridan, LJA, Moneyfund, FDR, Tyler, Turner, Audit Guard, and CCS, each with knowledge that the acts and conduct of A. Sheridan, W. Sheridan, and Rivers constituted actionable torts, with the intent to assist A. Sheridan, W. Sheridan, and/or Rivers in the commission of such torts, gave A. Sheridan, W. Sheridan, and Rivers assistance or encouragement. The assistance or encouragement of A. Sheridan, W. Sheridan, Rivers, L. Sheridan, C. Sheridan, LJA, Tyler, Turner, Audit Guard, and CCS was a substantial factor in causing the torts of conversion, defalcation, and breach of fiduciary duties.

86.    A. Sheridan, W. Sheridan, Rivers, L. Sheridan, C. Sheridan, LJA, Moneyfund, FDR, Tyler, Turner, Audit Guard, and CCS were members of a combination of two or more persons with an object to accomplish an unlawful purpose in converting Ms. Cash's stock interest in 4709, in inducing Ms. Cash to assign the Cameron Road Property to CCS, and to denude the assets of 4709 and Midtown Live by unlawful means. A. Sheridan, W. Sheridan, Rivers, L. Sheridan, C. Sheridan, LJA, Moneyfund, FDR, Tyler, Turner, Audit Guard, and CCS had a meeting of the minds on the object and course of action to convert Ms. Cash's stock interest in 4709, to induce Ms. Cash to assign the Cameron Road Property to CCS, and to denude the assets of 4709 and Midtown Live by unlawful means. A. Sheridan, W. Sheridan, and Rivers each committed an unlawful, overt act to further the object or course of the combination. Ms. Cash and 4709, for which Plaintiffs sue derivatively, were injured as a proximate result of the wrongful acts of A. Sheridan, W. Sheridan, and Rivers. Plaintiffs sue to recover the actual damages from each of the co-conspirators, jointly and severally. Plaintiffs also sue to recover exemplary damages from each of the co-conspirators, jointly and severally.

## APPLCATION FOR TEMPORARY RESTRAINING ORDERS, PRELIMINARY INJUNCTIVE AND PERMANENT INJUNCTIVE RELIEF

87.     Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 through 86.

88.     This Application is supported by the declarations of A. Jo Baylor, Arletha Cash, and Kell C. Mercer, attached hereto as Exhibits "T," "U," and "V," respectively.

89.     A plaintiff seeking a temporary injunction must plead and prove three elements: (1) a cause of action against the defendants and a probable right to the relief requested; (2) a probable and imminent injury; and (3) an irreparable injury or inadequate remedy at law. As described above and in Exhibits "T," and "U," Defendants have conspired to and have engaged in a campaign and conspiracy of conversion, defalcation, breach of fiduciary duty, and fraud, actionable under Texas law. These acts and conduct cause serious harm to Ms. Cash and 4709, for which Plaintiffs sue derivatively, damaging the enterprise value of 4709 and Midtown Live and placing the Cameron Road Property at imminent risk of foreclosure or levy. Defendants have absolutely no legal right to engage in these acts and conduct. The conduct of Defendants A. Sheridan, W. Sheridan, and Rivers is abhorrent and reprehensible. Defendants A. Sheridan, W. Sheridan, and Rivers have no defense to the claims of conversion, breach of fiduciary duty, and defalcation. As such, Plaintiffs clearly have a strong likelihood of success on the merits. Meanwhile, the threat of continued action by Defendants is imminent. The complained of acts and conduct of Defendants began in January of 2018 and have been persistent since. Defendants will continue these actions unless and until stopped by the Court. The acts and conduct of Defendants are entirely without right. The acts and conduct of Defendants create irreparable injury for which Plaintiffs lack an adequate remedy at law. The Plaintiffs will suffer irreparable harm without intervention by this Court and any remedy at law would be unavailable or inadequate.

90.     In light of the foregoing concerns, Plaintiffs' likelihood of success on the merits, and probability of harm, a temporary restraining order and injunction while this suit is pending is necessary to prevent further damaging acts and conduct by Defendants. Plaintiffs, suing on behalf of Ms. Cash and derivatively on behalf of 4709, seek the following injunctive relief: (1) entry of a Temporary Restraining Order enjoining Defendants, their respective agents, attorneys, and representatives of every type, from taking any further action on behalf of and/or in the name of 4709, Midtown Live, and/or Selena D. Cash, absent specific approval by the Bankruptcy Court;

(2) after notice and hearing, entry of a Preliminary Injunction until the time of trial enjoining Defendants, their respective agents, attorneys, and representatives of every type, from taking any further action on behalf of and/or in the name of 4709, Midtown Live, and/or Selena D. Cash, absent specific approval by the Bankruptcy Court; (3) after notice and hearing, entry of a mandatory Preliminary Injunction until the time of trial, appointing a neutral, third-party operator to manage and control the business and affairs of 4709 and Midtown Live; (4) after notice and hearing, entry of a Preliminary Injunction until the time of trial enjoining all Defendants, their respective agents, attorneys, and representatives of every type, from transferring, assigning, encumbering, and/or distributing from the Cameron Road Property or its rents, profits, and proceeds, absent specific approval by the Bankruptcy Court; and (5) after notice and hearing, entry of a mandatory Preliminary Injunction until the time of trial, appointing a neutral, third-party operator to manage and control the business and affairs of the Cameron Road Property.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, suing on behalf of Ms. Cash and derivatively on behalf of 4709, respectfully requests that each of the Defendants be served with summons and complaint and that the Bankruptcy Court:

(1) Enter a Temporary Restraining Order enjoining Defendants, their respective agents, attorneys, and representatives of every type, from taking any further action on behalf of and/or in the name of 4709, Midtown Live, and/or Selena D. Cash, absent specific approval by the Bankruptcy Court;

(2) After notice and hearing, enter a Preliminary Injunction until the time of trial enjoining Defendants, their respective agents, attorneys, and representatives of every type, from taking any further action on behalf of and/or in the name of 4709, Midtown Live, and/or Selena D. Cash, absent specific approval by the Bankruptcy Court;

(3) After notice and hearing, enter a mandatory Preliminary Injunction until the time of trial, appointing a neutral, third-party operator to manage and control the business and affairs of 4709 and Midtown Live;

(4) After notice and hearing, enter a Preliminary Injunction until the time of trial enjoining all Defendants, their respective agents, attorneys, and representatives of every type, from transferring, assigning, encumbering, and/or distributing from the Cameron Road Property or its rents, profits, and proceeds, absent specific approval by the Bankruptcy Court;

(5)    After notice and hearing, enter a mandatory Preliminary Injunction until the time of trial, appointing a neutral, third-party operator to manage and control the business and affairs of the Cameron Road Property;

(6)    enter a final declaratory judgment that 100% of the ownership interest in 4709 is held by Ms. Cash and constitutes property of the Bankruptcy Estate pursuant to 11 U.S.C. 541(a);

(7)    enter a final declaratory judgment under that none of the Defendants, including specifically but without limitation, A. Sheridan, Rivers, and/or W. Sheridan have or have had any ownership interest in or control over 4709;

(8)    enter a final declaratory judgment that each of the board and shareholder resolutions executed by Defendants A. Sheridan, W. Sheridan, and Rivers are void *ab initio* or rescinded, as applicable;

(9)    enter a final declaratory judgment rescinding and setting aside the MFS Agreement;

(10)    enter a final declaratory judgment rescinding and setting aside the Cameron Road Deed;

(11)    award damages in favor of Plaintiffs and against Defendants, jointly and severally, in amounts to be proven at trial;

(12)    award Plaintiffs their attorneys' fees and expenses;

(13)    award Plaintiffs all costs of court;

(14)    award Plaintiffs pre- and post-judgment interest as allowed by law; and

(15)    grant such other and further relief to which Plaintiffs may be justly entitled.


Dated:  September 24, 2019             Respectfully submitted,

KELL C. MERCER, P.C.
1602 E. Cesar Chavez Street
Austin, Texas  78702
(512) 627-3512
(512) 597-0767 (fax)

By:  */s/ Kell C. Mercer*
         Texas Bar No. 24007668
         kell.mercer@mercer-law-pc.com

**COUNSEL FOR PLAINTIFFS**