DocuSign Envelope ID: 94756F82-6F38-42A2-80DC-AF4E2B767369

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 18-11043-TMD** |
| **SELENA D. CASH** | § | |
| | § | **CHAPTER 7** |
| Debtor | § | |
| **J. PATRICK LOWE, Chapter 7 Trustee,** | § | |
| **and SELENA D. CASH, deceased,** | § | |
| **by and through ARLETHA CASH,** | § | |
| **Independent Administrator,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **ADVERSARY CASE** |
| | § | |
| **ANTHONY L. SHERIDAN,** | § | |
| **WILLIAM SHERIDAN,** | § | **NO. 19-1064-TMD** |
| **LINDA SHERIDAN,** | § | |
| **CEAIRA C. SHERIDAN,** | § | |
| **LM RIVERS, JR,** | § | |
| **LJA VENTURES, INC.,** | § | |
| **AUDIT GUARD, INC.,** | § | |
| **MONEYFUND, INC.,** | § | |
| **FDR MANAGEMENT GROUP, INC.,** | § | |
| **JOHNNIE R. TYLER, JR.** | § | |
| **ROBERT TURNER,** | § | |
| **and CCS ASSET MANAGEMENT, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## DECLARATION OF A. JO BAYLOR

I, A. Jo Baylor, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge:

1. I have personal knowledge of each of the facts set forth herein and, if called as a witness, would testify on the matters addressed in this declaration as set forth herein.

2. This Declaration is submitted in connection with and in support of the Plaintiffs' Original Complaint for Declaratory Judgment, Damages & Injunctive Relief (the "**Complaint**"). In particular, this Declaration is focused upon the Plaintiffs' current request for injunctive relief, including a temporary restraining order (a "TRO") and a preliminary injunction. The Declaration,

1

DocuSign Envelope ID: 94756F82-6F38-42A2-80DC-AF4E2B76789B

therefore, is organized to address the following factors: (A) a substantial likelihood of Plaintiffs' success on the merits, (B) a substantial threat of irreparable injury to Plaintiffs if the injunction is not issued, (C) that the threatened injury to Plaintiffs if the injunction is denied outweighs any harm that will result to Defendants if the injunction is granted, and (D) that the grant of an injunction will serve the public interest. I understand that a separate declaration from Kell Mercer is also being provided which includes documentation produced by and testimony given by Anthony L. Sheridan ("Sheridan").

### A. There is a Substantial Likelihood of Plaintiffs' Success on the Merits

3.       Fundamentally, this lawsuit seeks to reverse the actions of Sheridan, William Sheridan, and LM Rivers, Jr., and their co-conspirators, in stealing my mother's corporation, 4709, Incorporated, d/b/a Midtown Live ("4709") and then transferring the business personal property assets of 4709 to corporations owned and/or controlled by these Defendants. As reflected by the documents attached hereto as well as the documents and testimony attached to the Declaration of Kell Mercer, the acts and conduct of Sheridan, William Sheridan, and LM Rivers, Jr., and their co-conspirators, are unquestionably illegal and unsupportable under any legal theory. None of these actions were authorized to occur by my mother, the Debtor, Selena D. Cash, who I will refer to hereafter in this Declaration as "Mrs. Cash." I realize that the "Mrs." reference may be seen as antiquated, but I know that it is the manner in which my mother would have wanted to be addressed, so I shall carry forward her wishes here out of respect. All of these actions were contrary to the MFS Agreement that was made with my mother by Sheridan, LM Rivers, Jr., and John Hoberman.

4.       As is clear from the documents and testimony attached to the Declaration of Kell Mercer, the Defendants engaged in the following improper and actionable conduct:

(a) Defendants induced Mrs. Cash to enter into the MFS Agreement to address and restructure the debt of 4709. Pursuant to the MFS Agreement, the business of 4709 would be separated and placed into two entities: one entity to hold the Cameron Road Property, and one entity to own and operate Midtown Live. A third entity, a trust to hold Mrs. Cash's equity in each corporation, was also to be created. L.M. Rivers was to serve as the trustee of this trust for my mother's benefit.

(b) Mrs. Cash was informed by LM Rivers, Jr. that pursuant to the executive summary he would act as a member of the "Executive Control Board" and her trustee pursuant to a trust to be set up to hold her equity interest in an entity to hold the Cameron Road Property and an entity to hold Midtown Live as per the proposal. Mrs. Cash was further informed by LM Rivers, Jr. that he would sit on the "Executive Control Board" of 4709 and look after her interests as a trustee.

(c) In reliance upon the MFS Agreement, Mrs. Cash executed the Cameron Road Deed, conveying the Cameron Road Property to CCS Asset Management, Inc. Mrs. Cash did not understand at the time she executed the Cameron Road Deed that neither she nor a trust created for her benefit would own any of the business assets of 4709 through CCS Asset Management, Inc. or any other entity.

2

(d) Notwithstanding this material change to the MFS Agreement, which material change was never agreed upon or understood by Mrs. Cash, in exchange for the Cameron Road Deed, CCS Asset Management, Inc. obligated itself to pay to 4709 the sum of $1,700,000. CCS Asset Management, Inc.'s obligation was secured in the Cameron Road Deed under a "vendor's lien." The "vendor's lien" language identified a promissory note purportedly executed by CCS Asset Management, Inc. and in favor of 4709 in the amount of $1,700,000. However, as Sheridan later revealed, this note was never drafted and did not exist at the time Sheridan asked Mrs. Cash to execute the Cameron Road Deed on behalf of 4709. The note was just another part of a sham transaction. Defendant Sheridan also presented Mrs. Cash a Title Insurance Commitment from Stewart Title, File No. 159640, wherein he identified that the proposed insured under an Owner's Policy of Title Insurance would be 4709 with a policy amount of $1,700,000, intending for Mrs. Cash to believe that 4709 would be insured by the title policy.

(e) Defendants further induced Mrs. Cash to execute a limited Power of Attorney in favor of Sheridan to take certain acts solely on behalf of 4709. The Power of Attorney was not an authorization to act on behalf of Mrs. Cash individually.

(f) Purportedly utilizing the limited Power of Attorney, but without actual legal authority or power to do so, Sheridan began to systematically take action on behalf of Mrs. Cash, individually, to first appoint his co-conspirators to positions of control at 4709, and then to actually transfer Mrs. Cash's ownership interest in 4709 first to himself, then to LM Rivers, Jr., and, finally, to William Sheridan.

(g) After illegally appointing his co-conspirators to positions of purported ownership and management of 4709, At Sheridan's direction, CCS Asset Management, Inc. then leased the Midtown Live location at the Cameron Road Property to his own entity, LJA Ventures, Inc. In filings with the Texas Alcohol and Beverage Commission, despite having purportedly removed Mrs. Cash from all ownership and management positions at 4709, despite having purportedly assigned all of the operations and assets to CCS Asset Management, Inc., and despite CCS Asset Management, Inc. having purportedly leased the operations of Midtown Live to LJA Ventures, Inc., Sheridan continued through 2019 to identify 4709 as the permittee / operator and Mrs. Cash as the 100% owner and person in control. LJA Ventures, Inc., entered into leases with CCS and subleased property to other tenants, including a Sheridan family venture Southern Style Foods, Inc. According to this lease, Southern Style Foods, Inc. is operating a restaurant in the Midtown Live suite at the Cameron Road Property. Thus, Sheridan has diverted operating revenue from the restaurant from 4709, Trustee Lowe, and Mrs. Cash.

(h) With all of these steps completed, Sheridan and his co-conspirators through a corporate resolution dated October 20, 2018 then cancelled and released the $1,700,000 owed by CCS Asset Management, Inc. to 4709. He then twice recorded the release at the Travis County Clerk's office on October 29, 2018 and November 13, 2018 . Thus, the theft and conversion was complete.

(i) Sheridan's release of the $1,700,000 obligation of CCS Asset Management, Inc. to 4709 under the Cameron Road Deed occurred in spite of the fact that Sheridan's attorney, Darwin McKee, was notified that the limited Power of Attorney had been formally terminated on October 12, 2018. My attorney, Brian Walters, delivered my mother's notice of termination to Mr. McKee as well as documents revoking the limited Power of Attorney and documenting my mother's understanding that she was the sole officer, director, and shareholder of 4709 in the form of corporate minutes.

(j) Mrs. Cash did not authorize or approve the shareholder or board resolutions attached to the Complaint as Exhibits "G" through "Q." Mrs. Cash did not authorize or approve the releases of the lien attached to the Complaint as Exhibits "R" and "S."

(k) At all relevant times, having undertaken positions of trust and express positions of agency, Defendants Sheridan and LM Rivers, Jr. owed fiduciary duties to Mrs. Cash. At all relevant times, having accepted positions of management of 4709, Defendants Sheridan, LM Rivers, Jr., and William Sheridan owed fiduciary duties to and occupied positions of trust with regards to 4709 and my mother.

(l) Mrs. Cash repeatedly requested that Anthony Sheridan and LM Rivers, Jr. provide her with a status report on the actions they had agreed upon in MFS Agreement. Mrs. Cash repeatedly requested that Sheridan and LM Rivers, Jr. provide her with a report on the operations and financial condition of 4709 and the Cameron Road Property. Neither Sheridan nor LM Rivers, Jr. ever provided any meaningful information in response to these requests. Instead, Sheridan and LM Rivers, Jr. concealed the true facts regarding these matters from Trustee Lowe and Mrs. Cash. My mother never understood why she did not receive these reports, as she believed the conspirators who stole her business were simply working to rehabilitate it.

(m) These actions are contrary to the agreement contained in the MFS Agreement. These actions are contrary to and in violation of the duties owed to Mrs. Cash by Sheridan, LM Rivers, Jr., and William Sheridan. These actions are outrageous, repugnant, and cannot be supported under any factual or legal basis that could ever be advanced by the Defendants.

## B. A Substantial Threat of Irreparable Injury to Plaintiffs Exists If the Requested Injunction is not Issued

5.    The injunctive relief requested by Plaintiffs include: (1) entry of a Temporary Restraining Order enjoining Defendants, their respective agents, attorneys, and representatives of every type, from taking any further action on behalf of and/or in the name of 4709, Midtown Live, and/or Selena D. Cash, absent specific approval by the Bankruptcy Court; (2) after notice and hearing, entry of a Preliminary Injunction until the time of trial enjoining Defendants, their respective officers, directors, shareholders, managers, members, agents, attorneys, employees, contractors, and representatives of every type, from taking any further action on behalf of and/or in the name of 4709, Midtown Live, and/or Selena D. Cash, absent specific approval by the

Bankruptcy Court; (3) after notice and hearing, entry of a mandatory Preliminary Injunction until the time of trial, appointing a neutral, third-party operator to manage and control the business and affairs of 4709 and Midtown Live; (4) after notice and hearing, entry of a Preliminary Injunction until the time of trial enjoining all Defendants, their respective agents, attorneys, and representatives of every type, from transferring, assigning, encumbering, and/or distributing from the Cameron Road Property or its rents, profits, and proceeds, absent specific approval by the Bankruptcy Court; and (5) after notice and hearing, entry of a mandatory Preliminary Injunction until the time of trial, appointing a neutral, third-party operator to manage and control the business and affairs of the Cameron Road Property.

6.      As is clear from the documentation attached to the Declaration of Kell Mercer, Defendants Sheridan and his co-conspirators have a proven track record of committing fraud, acting contrary to written agreements, acting beyond granted authority, and breaching fiduciary duties. My mother, who trusted these individuals, was simply the next target on their list.

7.      The acts and conduct of Defendants Sheridan and his co-conspirators also demonstrate that they lack the basic competency necessary to lawfully run a business. Highlighting these concerns is the manner in which Sheridan and his co-conspirators have dealt with the operation of Midtown Live. Also at issue, there is the purported disposition by 4709 of the Midtown Live business personal property and operational assets to CCS Asset Management, Inc. A review of the Cameron Road Deed makes clear that 4709 never transferred its business personal property to CCS Asset Management, Inc. The Cameron Road Deed only covers the real property that is the Cameron Road Property located at 7400 / 7408 Cameron Road in Austin, Texas. Yet Defendant Sheridan now takes the position that all of the business personal property of 4709 was transferred to CCS Asset Management, Inc. utilizing the Cameron Road Deed. There is no bill of sale or asset purchase agreement between 4709 and CCS Asset Management, Inc. Any reasonably competent businessperson or real estate broker would know that a purchase of business personal property assets is not accomplished through a real property deed.

8.      A recent email thread between Defendant Sheridan and staff at the Travis Central Appraisal District ("TCAD"), attached hereto as **Exhibit 1**, perfectly illustrates Sheridan's continued fraudulent activity and fundamental misunderstanding of basic legal and business concepts. Attached hereto is that exchange between TCAD and Sheridan beginning on June 12, 2019. Sheridan, in his email communications with TCAD, attempts to transfer ownership status of the business personal property of 4709 to CCS Asset Management, Inc. Sheridan claims that CCS Asset Management, Inc. has owned the property since February 9, 2018. TCAD responds by stating "you will need to file a protest in wring and provide the sales contract for the fixed asset/inventory of the business." In response, Sheridan sent TCAD the Cameron Road Deed as proof of ownership. TCAD correctly responded by stating "I don't see anything in the warranty deed that would include the business personal property fixed assets. It covers land and improvements (building)." TCAD also stated that "the TABC permit is still active under 4709, Inc. and I didn't' find a TABC or sales tax permit for CCS Asset Management, Inc. The business cannot be operated without those permits." In the email thread, TCAD asked Sheridan whether he is affiliated with CCS Asset Management, Inc. or 4709, Inc. Sheridan responds, "both." Sheridan states that "4709 is leasing the liquor license to LJA Ventures." Sheridan states that "the previous owner filed bankruptcy and she declared complete sale of all property real and personal under

5

oath." I believe the statement regarding my mother's purported statement "under oath" is a complete lie. As of June 1, 2019 Sheridan had been deposed and informed of Mrs. Cash's position that all of his actions with respect to 4709 were without right or authority. Nonetheless, in the deposition I learned of a lease agreement between CCS Asset Management, Inc. and LJA Ventures, Inc. (owned and controlled by Sheridan and his family members), through which the Midtown Live restaurant and club is now being operated by LJA Ventures, Inc. Plaintiffs have come to learn that Sheridan continues to report to the TABC that Midtown Live is owned and operated by 4709 and that Mrs. Cash is the 100% owner of 4709. This creates substantial risk of liability to Mrs. Cash's bankruptcy and probate estates including, but not limited to, civil liability under Texas dram shop laws as well as administrative/regulatory penalties and sanctions. Further, Mrs. Cash's bankruptcy schedules make clear that she continued to claim 100% ownership of 4709 and Midtown Live. There is no lease of the TABC permit between 4709 and LJA Ventures, Inc. Even if there were, Sheridan allowed LJA Ventures, Inc. to forfeit its corporate existence in January of 2019. It was not reinstated until April of 2019. Finally, this all makes an invalid assumption that a TABC permit holder could legally "lease" an mixed beverage and late night permit to a third party. Based on my experience as a club owner, such an arrangement would be prohibited by TABC rules and regulations.

9.      Sheridan's assertion in his email exchange with TCAD that it is "assumed" that business personal property goes with the real estate if not expressed in writing is ludicrous and not common practice in Travis County or elsewhere. Even the Cameron Road Property sign is not included with the sale of the real estate. No assignment or assumption of leases, FF&E notes was executed, no goodwill allocation, nor assignment of tenant security deposits, branded names - Midtown use of name or Logos, assignable use, zoning, building and operating licenses and permits or warranties was granted. Mrs. Cash's accountants would have insisted on a value allocated to the business personal property so that any loss or gain would be assigned to her income as a shareholder. The alleged stock transfer also has potential negative ramifications for Mrs. Cash depending on her basis. Mrs. Cash was never given the opportunity to make a decision on how to structure the sale of her business if that is what she wanted to reduce taxes or potential liabilities. Instead, Sheridan may have incurred transactional, legal, and tax liabilities for Sheridan with his false 4709 corporate resolutions and the self-dealing releases of the lien of over $1,700,000 since no interest was paid, which only served to benefit Sheridan, his co-conspirators, and his businesses.

10.      Sheridan's willingness to make such false statements to the TABC and TCAD are truly shocking. They demonstrate his complete incompetence to run the affairs of 4709, the Cameron Road Property, and Midtown Live. Sheridan's incompetence is further illustrated by the recent Chapter 11 filing he attempted for 4709 which, in my opinion, was a sham filing designed to do little more than buy these conspirators time to plot and scheme. Furthermore, Sheridan has failed to file tax returns for 4709 on my mother's behalf or to provide her with sufficient information to file her individual tax returns for 2017 and 2018. Even though I have requested information from Sheridan regarding the insurance on 4709, Sheridan has provided nothing to date.

11.      I believe that since purportedly seizing control of Midtown Live in the spring of 2018, Anthony Sheridan, William Sheridan, LM Rivers, Jr., and others have grossly mismanaged Midtown Live and the Cameron Road Property. I believe that Anthony Sheridan, William

Sheridan, LM Rivers, Jr., and others have taken over bank accounts belonging to 4709 without right or authority. Anthony Sheridan, William Sheridan, LM Rivers, Jr., and others have refused to provide any financial or operational information requested by Mrs. Cash or Lowe. I am also alarmed by the fact that the attorneys who Sheridan brought in to represent my mother were actually working with and representing Sheridan, and continued to do so up to and including the time when Sheridan was deposed, unbeknownst to my mother.

12.     I believe that Midtown Live has been and continues to be out of compliance with TABC regulations and the statutes governing the sale of alcoholic beverages in Texas. I believe that Anthony Sheridan, William Sheridan, and LM Rivers, Jr. have filed or allowed to be filed false statements with TABC, placing the entire operation of the Midtown Live club at risk.

13.     I believe that Anthony Sheridan, William Sheridan, and LM Rivers, Jr. have mishandled the payment of wages to and taxes for the staff of Midtown Live, placing Midtown Live at risk of being assessed fines and penalties, and/or being levied upon and/or shut down by the IRS, the United States Department of Labor, and/or the Texas Workforce Commission.

14.     I believe that, despite paying nothing to 4709 for the assignment of the Cameron Road Property, and despite not being set up in compliance with the terms of the MFS Agreement, CCS continues to collect rents from the tenants of the Cameron Road Property. No rents have been paid to Mrs. Cash or to Lowe. I believe that CCS has entered into new leases with tenants at the Cameron Road Property without my mother or Lowe's permission.

15.     I believe that Anthony Sheridan, acting through CCS Asset Management, Inc., Audit Guard, Inc., and others, and Anthony Sheridan and LM Rivers, Jr., acting through LJA, receives the rents and benefits from Cameron Road Property without an accounting to Lowe, Mrs. Cash, and/or 4709. I believe that Anthony Sheridan and FDR Management Group Inc. d/b/a The FDR Group has served as a broker in connection with leases entered into by CCS Asset Management, Inc. and sub-leases entered into by LJA Ventures, Inc. I believe that Anthony Sheridan has received commissions from such leases through the FDR Group or other entities has personally benefited from such transactions. Anthony Sheridan and others have not accounted to Lowe, Mrs. Cash, and/or 4709 for these transactions by CCS Asset Management, Inc., Audit Guard, Inc., and Sheridan's other business entities.

16.     I believe that LJA Ventures, Inc., acting under the control of Anthony Sheridan and LM Rivers, Jr., has entered into an agreement with CCS As and 4709 pursuant to which LJA obtained the use and benefit of the business personal property, goodwill, and other assets of Midtown Live without any payment or accounting to Mrs. Cash and/or 4709.

17.     I believe that CCS and/or LJA Ventures, Inc. have failed to timely pay real and/or business personal property taxes for the Cameron Road Property and Midtown Live, placing these assets at risk of seizure and/or foreclosure. I believe that CCS, acting under the control of Anthony Sheridan has failed to properly review and challenge appraised values set by the Travis Central Appraisal District for the Cameron Road Property, subjecting the property to higher than appropriate taxes.

18.     All of these actions place the bankruptcy estate and my mother's probate estate at substantial risk. I believe the Defendants lack basic insurance to cover these claims, and that 4709 currently lacks even the most basic insurance coverages. In the absence of that coverage, I believe that Defendants have no ability to satisfy the claims that these actions risk, and that creditors will look to my mother's estate for satisfaction of the debts and obligations incurred by those who unlawfully transferred away my mother and her business's assets when she was in a fragile state.

19.     The only way to prevent this damage is to immediately remove Defendants, their respective agents, attorneys, and representatives of every type, from taking any further action on behalf of and/or in the name of 4709, Midtown Live, and/or Selena D. Cash, absent specific approval by the Bankruptcy Court. In the longer term, pending outcome of the litigation, the only way to prevent this irreparable damage is entry of a Preliminary Injunction until the time of trial appointing a neutral, third-party operator to manage and control the business and affairs of 4709 and Midtown Live and the Cameron Road Property.

### C. The Threatened Injury to Plaintiffs if the Injunction is Denied Outweighs any Harm that Will Result to Defendants if the Injunction is Granted

20.     As noted above, the threatened injury to Plaintiffs is severe. On the other hand, the Defendants are acting without any right or valid legal interest. An order from this Court putting a stop to the Defendants' fraudulent and illegal operations and ceasing their misleading communications to third parties will not truly harm the Defendants. It will only restore to my mother's estate income and assets to which it is justly entitled and protect those assets throughout the pendency of this litigation.

### D. The Grant of an Injunction Will Serve the Public Interest

21.     In fact, the Public Interest will be served by the requested injunctive relief. Granting the injunction will cease the false and illegal actions and communications of the Defendants in connection with the TABC and TCAD. Adult Protective Services programs report that the number and complexity of financial abuse of older adults has increased significantly over the past decade. Recent research has found that elder financial exploitation by trusted people such as caregivers, friends/acquaintances, and professionals is widespread, expensive, and even deadly. Sheridan and LM Rivers, Jr. were the "trusted professionals" who took advantage of my mother for years leading up to and including the 90th and final year of her life. Sheridan has posted two signs advertising his services to the general public at the Cameron Road Property. He is using stolen property to freely advertise his fraudulent real estate brokerage and lending businesses to the general public. The traffic count on Cameron Road is believed to be in excess of 15,000 cars per day extending the reach of his fraudulent activities throughout the community at large. The tenants at the Cameron Road Property are paying under triple net leases. There is no evidence that he is segregating funds to pay the taxes and other expenses for which he has received payment from the tenants. Undoubtedly, the public interest would be best served by removing the Defendants' control of 4709's assets, including the Cameron Road Property and Midtown Live.

Dated: October ___, 2019
10/17/2019

DocuSigned by:

A. Jo Baylor

DocuSign Envelope ID: 94756F82-6F38-42A2-80DC-AF4E2B767913

## EXHIBIT 1

## ADDITIONAL REFERENCED DOCUMENTS

*[See attached.]*

DocuSign Envelope ID: 0B1756F52J6F93J42A689DC-4E4F2B7670219

## Debbie Horn

| | |
|---|---|
| **From:** | Anthony Sheridan <als@moneyfundonline.com> |
| **Sent:** | Thursday, June 13, 2019 11:06 AM |
| **To:** | Debbie Horn |
| **Subject:** | RE: 4709 INC Personal Property ID: 824039 |

I am affiliated with both. This mistake was overlooked and should have been updated in 2018.

CCS bought property "As is" and real estate if it is not expressed in writing it is assumed that personal property goes with it sale.

4709 inc is leasing the liquor license to LJA Ventures.

The previous owner filed bankruptcy and she declared complete sale of all property real and personal under oath.

Make it a great day!
Anthony Leo Sheridan BA, MBA
Commercial Lending Officer

MoneyFund Inc.
111 Congress Avenue, 4th Floor
Austin, TX 78701

Office: 888-812-6255 Ext. 107
Fax: 512-410-7342
E-mail: als@moneyfundonline.com
http://www.moneyfundonline.com/

This e-mail message and any files transmitted herewith are intended solely for the use of the individual (s) addressed and may contain confidential proprietary or privileged information. If you are not the addressee indicated in this message or responsible for delivery of this message to such person, you may not review, uses disclose or distribute this message or any files transmitted herewith. If you receive this message in error, please contact the sender by reply e-mail and delete this message and all copies of it from your system

**From:** Debbie Horn [mailto:DHorn@tcadcentral.org]
**Sent:** Thursday, June 13, 2019 10:19 AM
**To:** 'als@moneyfundonline.com'
**Subject:** RE: 4709 INC Personal Property ID: 824039

I don't see anything in the warranty deed that would include the business personal property fixed assets – it covers land and improvement (building). Maybe those assets are included in the Deed of Trust?

The TABC permit is still active under 4709 Inc and I didn't find a TABC or sales tax permit for CCS Asset Management Inc. The business cannot be operated without those permits.

Are you affiliated with CCS Asset Management Inc or 4709 Inc?

Debbie Horn, RPA
Travis Central Appraisal District
PO Box 149012
Austin TX 78714-9012

1

512-834-9317 x513

---

**From:** Anthony Sheridan <als@moneyfundonline.com>
**Sent:** Thursday, June 13, 2019 10:13 AM
**To:** Debbie Horn <DHorn@tcadcentral.org>
**Subject:** RE: 4709 INC Personal Property ID: 824039
**Importance:** High

Please see attachments

Make it a great day!
Anthony Leo Sheridan BA, MBA
Commercial Lending Officer

MoneyFund Inc.
111 Congress Avenue, 4th Floor
Austin, TX 78701

Office: 888-812-6255 Ext. 107
Fax: 512-410-7342
E-mail: als@moneyfundonline.com
http://www.moneyfundonline.com/

This e-mail message and any files transmitted herewith are intended solely for the use of the individual (s) addressed and may contain confidential proprietary or privileged information. If you are not the addressee indicated in this message or responsible for delivery of this message to such person, you may not review, uses discloses or distribute this message or any files transmitted herewith. If you receive this message in error, please contact the sender by reply e-mail and delete this message and all copies of it from your system

---

**From:** Debbie Horn [mailto:DHorn@tcadcentral.org]
**Sent:** Thursday, June 13, 2019 8:46 AM
**To:** 'als@moneyfundonline.com'
**Subject:** RE: 4709 INC Personal Property ID: 824039

You will need to file a protest in writing and provide the sales contract for the fixed asset/inventory of the business.

Business Personal Property Dept

---

**From:** Martin Wilbanks <taxpayerliaison@tcadcentral.org>
**Sent:** Thursday, June 13, 2019 8:39 AM
**To:** Debbie Horn <DHorn@tcadcentral.org>
**Subject:** FW: 4709 INC Personal Property ID: 824039

Martin Wilbanks
Travis Taxpayer Liaison

---

**From:** Anthony Sheridan [mailto:als@moneyfundonline.com]
**Sent:** Wednesday, June 12, 2019 4:19 PM
**To:** Martin Wilbanks
**Subject:** 4709 INC Personal Property ID: 824039

2

This is incorrect and brought to my attention. This was purchased by CCS Asset Management Inc in January 2018.

What do I need to do to correct this?

CCS Asset Management owns the personal property since 2-9-2018.

Make it a great day!
Anthony Leo Sheridan BA, MBA
Commercial Lending Officer

MoneyFund Inc.
111 Congress Avenue, 4th Floor
Austin, TX 78701

Office: 888-812-6255 Ext. 107
Fax: 512-410-7342
E-mail: als@moneyfundonline.com
http://www.moneyfundonline.com/

This e-mail message and any files transmitted herewith are intended solely for the use of the individual (s) addressed and may contain confidential proprietary or privileged information. If you are not the addressee indicated in this message or responsible for delivery of this message to such person, you may not review, uses discloses or distribute this message or any files transmitted herewith. If you receive this message in error, please contact the sender by reply e-mail and delete this message and all copies of it from your system

**TEXAS SECRETARY of STATE**
**RUTH R. HUGHS**

### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 802862614 | **Entity Type:** | Domestic For-Profit Corporation |
| **Original Date of Filing:** | November 15, 2017 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32065434410 | **FEIN:** | |
| **Duration:** | Perpetual | | |

| | |
|---|---|
| **Name:** | LJA VENTURES INC. |
| **Address:** | 13276 RESEARCH BLVD STE 208 |
| | AUSTIN, TX 78750 USA |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSOCIATED ENTITIES |
|---|---|---|---|---|

| Assumed Name | Date of Filing | Expiration Date | Inactive Date | Name Status | Counties |
|---|---|---|---|---|---|
| Midtown Live Sports Cafe | February 9, 2018 | February 9, 2028 | | Active | All Counties |

Order   Return to Search

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

DocuSign Envelope ID: 84756F82-9F38-4242-80DC-A5AE2B767219

11/27/2018            Public Information Report

# Public Information Report

## Public Information Report
## 4709 INCORPORATED, D/B/A MIDTOWN LIVE

Report Year :2017

Information on this site is obtained from the most recent Public Information Report (PIR) processed by the Secretary of State (SOS). PIRs filed with annual franchise tax reports are forwarded to the SOS. After processing, the SOS sends the Comptroller an electronic copy of the information, which is displayed on this web site. The information will be updated as changes are received from the SOS.

You may order a copy of a Public Information Report from open.records@cpa.texas.gov or Comptroller of Public Accounts, Open Records Section, PO Box 13528, Austin, Texas 78711.

| Title | Name and Address |
|---|---|
| VICE-PRESI | **ANTHONY SHERIDAN**<br>13276 NORTH HIGHWAY 183 SUITE 208 AUSTIN, TX 78750 |
| TREASURER | **LM RIVERS JR**<br>13276 NORTH HIGHWAY 183 SUITE 208 AUSTIN, TX 78750 |
| SECRETARY | **WILLIAM SHERIDAN**<br>13276 NORTH HIGHWAY 183 SUITE 208 AUSTIN, TX 78750 |
| PRESIDENT | **WILLIAM SHERIDAN**<br>13276 NORTH HIGHWAY 183 SUITE 208 AUSTIN, TX 78750 |

## ASSUMPTION WARRANTY DEED WITH VENDOR'S LIEN

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

Date: January 9, 2018

TRV
3 PGS

2018005497

Grantor: 4709 Incorporated, d/b/a Midtown Live, a Texas corporation

Grantor's Mailing Address (including county): 7602 Brookhollow Cove
Austin Texas 78752
Travis County

Grantee: CCS Asset Management Inc., a Texas corporation

Grantee's Mailing Address (including county): 111 Congress Avenue 4th Floor
Austin Texas 78701
Travis County

Consideration: TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration and a wrap around note of even date that is in the principal amount of Note Amount DOLLARS ($1,700,000.00) and is executed by Grantee, payable to the order of Seller. It is secured by a vendor's lien retained in this deed and by a deed of trust of even date from Grantee to Daniel Nelson, Trustee.

Property (including any improvements):

**Lot 2, Re-subdivision of Lot 11, REAGAN HILL, a subdivision in Travis County, Texas, according to the map or plat thereof recorded in Volume 92, Page 65, of the Plat Records of Travis County.**

Reservations from and Exceptions to conveyance and Warranty:

This conveyance is made and accepted subject to conditions, restrictions, and easements appearing of record, if any, in Travis County, Texas, which affect the hereinabove described property; and

Grantee understands and agrees that Grantee is buying the Property **"as is-- where is"** with no representations or warranties as to fitness or use for a particular purpose. Grantee has made an examination of the Property prior to closing and has had reasonable access to the property prior to closing to determine the condition and prior use of the Property. The purchase price of the Property was negotiated based upon the current condition of the Property. Grantor makes no representations or warranties and specifically disclaims having made any representations or warranties of any kind or nature about the condition or prior use of the Property, including, but not limited to any environmental matters. Grantee is not relying on any representations made by Grantor concerning any prior use or condition of the Property. After closing, Grantee and Grantee's successors and assigns, will make no claim against Grantor concerning the condition of the Property and/or any prior use of the Property and shall indemnify and save Grantor harmless from any and all claims made after closing by, through or under Grantee, including attorney's fees.

Grantor, for the consideration and subject to the exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenance thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

But it is expressly agreed that the VENDOR'S LIEN, as well as the Superior Title in and to the above described premises, is retained against the above described property, premises and improvements until the above described note and all interest thereon is fully paid according to the face, tenor, effect and reading thereof, when this Deed shall become absolute.

**Seller**, at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the property that is evidenced by the note described. The vendor's lien and superior title to the property are retained for the benefit of **Seller** and are transferred to that party without recourse on Grantor.

This conveyance is made subject to the prior lien secured by Deed of Trust, Extensions and a Transfer recorded in Document #2011137642, #2012004604, #2013019734 and #2015025866 of the Official Public Records of Travis County, Texas, from **Seller** to **Original County Trustee**, Trustee, which secures payment of a promissory note in the original principal amount of **Original Loan Amount** DOLLARS ($1,100,000.00). Grantee in this deed does not assume payment of that **$Orig. Loan Amt.** note. Payee of the wraparound note is obligated to pay all installments on the **$Orig. Loan Amt** note as they fall due. In the event of default in payment of that **$Orig. Loan Amt.** note, Grantee shall have the right to cure any such default as long as Grantee is not in default in payment of the wraparound note or in performance of the covenants of the deed of trust securing it. If Grantee cures a default in payment of the **$Orig. Loan Amt.** note, Grantee may receive credit on the wraparound note for all amounts so paid as of the date of the payment, in the manner that Grantee directs.

When the context requires, singular nouns and pronouns include the plural.

EXECUTED this the 9th day of January, A.D. 2018.

                        4709 INCORPORATED D/B/A
                        MIDTOWN LIVE

                        BY:
                        Selena Cash, Director and President

STATE OF TEXAS          §
COUNTY OF TRAVIS        §


This instrument was acknowledged before me on the 9th day of January, 2018, by Selena Cash as a Director and President of 4709 Incorporated d/b/a Midtown Live, a Texas corporation, on behalf of that corporation.

TODD VOYLES
My Commission Expires
June 9, 2019

                        NOTARY PUBLIC, STATE OF TEXAS



Unofficial Document

Return:
Anthony Shannan
111 Congress Ave #400
Austin TX 78701

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

*[signature]*

2018005497
Jan 11, 2018 02:55 PM
CONTROLBSN: $34.00
Dana DeBeauvoir, County Clerk
Travis County, TEXAS

19-01004-lmd Doc#6-1 Filed 10/02/19 Entered 10/02/19 13:06:05 Exhibit Declaration of

# 2019 Notice of Appraised Value

**TRAVIS CENTRAL APPRAISAL DISTRICT**
**8314 CROSS PARK DR**
**P O BOX 149012**
**AUSTIN, TX 78714-9012**
Phone: (512) 834-9138

DATE OF NOTICE: June 10, 2019
#BWNNRFT
#1414995628240393#

Property ID: 824039 - 00008240390000
CAPTA INC
Agent for: 4709 INC
BAYLOR ARONETTA J
6000 HOOD HOLLOW
AUSTIN, TX 78731

**Property ID:** 824039
**Ownership %:** 100.00
**Ref ID2:** 00008240390000
**DBA:** MIDTOWN LIVE SPORTS CAFE
**Legal:** PERSONAL PROPERTY COMMERCIAL    MIDTOWN LIVE SPORTS CAFE
**Legal Acres:**
**Situs:** 7408 CAMERON RD E AUSTIN, TX 78752
**Agent ID:** 1499562

## THIS IS NOT A BILL

Dear Property Owner,
We have appraised the property listed above for the tax year 2019.  As of January 1, our appraisal is outlined below.

| Market Value | Assessed Value (Includes Homestead Limitation if Applicable) |
|---|---|
| 52,235 | 52,235 |

| Taxing Unit | 2018 Exemption | 2018 Exemption Amount | 2019 Exemption | 2019 Exemption Amount | Exemption Amount Change | 2018 Taxable | 2019 Taxable | Freeze Year and Ceiling |
|---|---|---|---|---|---|---|---|---|
| AUSTIN ISD | | 0 | | 0 | | 52,235 | 52,235 | |
| CITY OF AUSTIN | | 0 | | 0 | | 52,235 | 52,235 | |
| TRAVIS COUNTY | | 0 | | 0 | | 52,235 | 52,235 | |
| TRAVIS COUNTY HEALTHCARE | | 0 | | 0 | | 52,235 | 52,235 | |
| AUSTIN COMM COLL DIST | | 0 | | 0 | | 52,235 | 52,235 | |

If you qualified your home for a 65 and older or disabled person exemption for school taxes, the school taxes on that home cannot increase as long as you own and live in that home.  The tax ceiling is the amount that you pay in the year that you qualified for the 65 and older or disabled person exemption. The tax ceiling is the amount that you pay in the year that you qualified for the 65 and older or disabled person exemption. The school taxes on your home may not go above the amount of the ceiling, unless you improve the home (other than normal repairs and maintenance). If you improved your property (by adding rooms or buildings) or you are transferring a freeze percentage, your school, county, city, or junior college Ceiling may increase from prior years.
Enclosed are copies of the following documents published by the Texas Comptroller of Public Accounts: (1) Property Tax Remedies; and (2) notice of protest.

# Travis CAD

## Property Search > 824039 CCS ASSET MANAGEMENT INC for Year 2019

Tax Year: 2019

## Property

### Account

| | | | |
|---|---|---|---|
| Property ID: | 824039 | Legal Description: | PERSONAL PROPERTY COMMERCIAL MIDTOWN LIVE SPORTS CAFE |
| Geographic ID: | | Zoning: | |
| Type: | Personal | Agent Code: | |
| Property Use Code: | | | |
| Property Use Description: | | | |

### Protest

Protest Status: SCHW(Schedule With)
Informal Date:
Formal Date: 09/24/2019 10:20 AM

### Location

| | | |
|---|---|---|
| Address: | 7408 CAMERON RD E AUSTIN, TX 78752 | Mapsco: |
| Neighborhood: | | Map ID: |
| Neighborhood CD: | | |

### Owner

| | | | |
|---|---|---|---|
| Name: | CCS ASSET MANAGEMENT INC | Owner ID: | 1587153 |
| Mailing Address: | 111 CONGRESS AVE #400 AUSTIN , TX 78701-4143 | % Ownership: | 100.0000000000% |
| | | Exemptions: | |

## Values

| | | | |
|---|---|---|---|
| (+) Improvement Homesite Value: | + | $0 | |
| (+) Improvement Non-Homesite Value: | + | $0 | |
| (+) Land Homesite Value: | + | $0 | |
| (+) Land Non-Homesite Value: | + | $0 | Ag / Timber Use Value |
| (+) Agricultural Market Valuation: | + | $0 | $0 |
| (+) Timber Market Valuation: | + | $0 | $0 |
| | | ------------------------ | |
| (=) Market Value: | = | $52,235 | |
| (–) Ag or Timber Use Value Reduction: | – | $0 | |
| | | ------------------------ | |
| (=) Appraised Value: | = | $52,235 | |
| (–) HS Cap: | – | $0 | |
| | | ------------------------ | |
| (=) Assessed Value: | = | $52,235 | |

## Taxing Jurisdiction

Owner: CCS ASSET MANAGEMENT INC
% Ownership: 100.0000000000%

Total Value:     $52,235

| Entity | Description | Tax Rate | Appraised Value | Taxable Value | Estimated Tax |
|---|---|---|---|---|---|
| 01 | AUSTIN ISD | 1.192000 | $52,235 | $52,235 | $622.65 |
| 02 | CITY OF AUSTIN | 0.440300 | $52,235 | $52,235 | $229.99 |
| 03 | TRAVIS COUNTY | 0.354200 | $52,235 | $52,235 | $185.01 |
| 0A | TRAVIS CENTRAL APP DIST | 0.000000 | $52,235 | $52,235 | $0.00 |
| 2J | TRAVIS COUNTY HEALTHCARE DISTRICT | 0.105221 | $52,235 | $52,235 | $54.96 |
| 68 | AUSTIN COMM COLL DIST | 0.104800 | $52,235 | $52,235 | $54.74 |
|  | Total Tax Rate: | 2.196521 |  |  |  |
|  |  |  |  | Taxes w/Current Exemptions: | $1,147.35 |
|  |  |  |  | Taxes w/o Exemptions: | $1,147.35 |

## Improvement / Building

No improvements exist for this property.

## Land

No land segments exist for this property.

## Roll Value History

| Year | Improvements | Land Market | Ag Valuation | Appraised | HS Cap | Assessed |
|---|---|---|---|---|---|---|
| 2019 | $0 | $0 | 0 | 52,235 | $0 | $52,235 |
| 2018 | $0 | $0 | 0 | 52,235 | $0 | $52,235 |
| 2017 | $0 | $0 | 0 | 52,235 | $0 | $52,235 |
| 2016 | $0 | $0 | 0 | 52,235 | $0 | $52,235 |
| 2015 | $0 | $0 | 0 | 58,092 | $0 | $58,092 |
| 2014 | $0 | $0 | 0 | 64,868 | $0 | $64,868 |

## Deed History - (Last 3 Deed Transactions)

| # | Deed Date | Type | Description | Grantor | Grantee | Volume | Page | Deed Number |
|---|---|---|---|---|---|---|---|---|

Questions Please Call (512) 834-9317

This site requires cookies to be enabled in your browser settings.

Website version: 1.2.2.30

Database last updated on: 9/23/2019 9:24 PM

© N. Harris Computer Corporation

DocuSign Envelope ID: 64766582-9538-42A2-80DC-AE4E2B707219

# 12/31/15      2015 FEDERAL SUMMARY DEPRECIATION SCHEDULE      PAGE 1

**4709, INC.**          74-2568435

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT. | CUR 179/ SDA | PRIOR 179/ SDA/ DEPR. | METHOD | LIFE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|
| **FORM 1120S** | | | | | | | | | | |
| 2 | SAMSUNG CASH REGISTER | 11/23/05 | | 704 | | | 704 | 200DB MQ | 5 | 0 |
| 3 | EQUIPMENT | 6/30/06 | | 324 | | | 324 | 200DB HY | 5 | 0 |
| 4 | 2007 FORD F150 | 3/01/07 | | 37,857 | | | 37,857 | 200DB HY | 5 | 0 |
| 5 | CHAIRS - CLUB | 9/14/07 | | 1,375 | | | 1,375 | 200DB HY | 7 | 0 |
| 13 | EQUIPMENT - CLUB | 8/13/12 | | 42,846 | | | 20,410 | 200DB HY | 7 | 5,351 |
| 14 | FURNITURE - CLUB | 8/13/12 | | 12,544 | | | 7,059 | 200DB HY | 7 | 1,567 |
| 15 | LEASEHOLD IMPROV - CLUB | 8/13/12 | | 220,005 | | | 13,401 | 200DB HY | 39 | 5,641 |
| 16 | LOAN FEES - CLUB | 8/13/12 | | 97,126 | | | 5,915 | S/L MM | 39 | 2,490 |
| 17 | CLOSING COSTS - CLUB | 8/13/12 | | 6,748 | | | 411 | S/L MM | 39 | 173 |
| 18 | EQUIPMENT - CLUB | 6/30/13 | | 9,126 | | | 3,539 | 200DB HY | 7 | 1,596 |
| 19 | FURNITURE - CLUB | 6/30/13 | | 1,587 | | | 616 | 200DB HY | 7 | 278 |
| | TOTAL | | | 430,242 | | 0 | 95,311 | | | 17,096 |
| | TOTAL DEPRECIATION | | | 430,242 | | 0 | 95,311 | | | 17,096 |
| **RENTAL REAL ESTATE (8825) - MEADOW GLEN SHOPPING CENTE** | | | | | | | | | | |
| 1 | MEADOW GLEN - LAND | 3/11/94 | | 33,758 | | | | | | 0 |
| 6 | IMPROVEMENTS MG - 2010 | 12/31/11 | | 636,112 | | | 49,611 | S/L MM | 39 | 16,310 |
| 7 | IMPROVEMENTS MG -2012 | 12/31/11 | | 187,046 | | | 14,388 | S/L MM | 39 | 4,796 |
| 8 | LOAN FEES-MG - 2012 | 12/31/11 | | 71,990 | | | 5,538 | S/L MM | 39 | 1,846 |
| 9 | CLOSING COSTS - POA MG - | 12/31/11 | | 141,507 | | | 10,884 | S/L MM | 39 | 3,628 |
| 10 | IMPROVEMENTS MG-2012 | 12/31/11 | | 144,657 | | | 11,127 | S/L MM | 39 | 3,709 |
| 11 | IMPROVEMENTS MG-2012 | 12/31/11 | | 297,450 | | | 22,881 | S/L MM | 39 | 7,627 |
| 12 | CONST PERIOD INTEREST MG | 12/31/11 | | 31,254 | | | 2,403 | S/L MM | 39 | 801 |
| | TOTAL | | | 1,543,774 | | 0 | 116,832 | | | 38,717 |
| | TOTAL DEPRECIATION | | | 1,543,774 | | 0 | 116,832 | | | 38,717 |
| | GRAND TOTAL DEPRECIATION | | | 1,974,016 | | 0 | 212,143 | | | 55,813 |



